**Thelma R. CURRY and Yolanda Quimby, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 02–101C.

United States Court of Federal Claims.

July 8, 2005.

Ira M. Lechner, Escondido, California, for the plaintiffs.

Hillary A. Stern, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director, all of Washington, D.C., for the defendant. Meghan Serwin, Office of General Counsel, Department of Veterans Affairs, Washington, D.C., of counsel.

## OPINION AND ORDER

WOLSKI, Judge.

The plaintiffs Thelma M. Curry and Yolanda Quimby, current and former employees of the Department of Veterans Affairs Health Administration ("VHA"), seek on behalf of themselves, and all similarly-situated plaintiffs, back payments for "additional pay" for regularly scheduled night and weekend work during authorized, paid periods of military leave, court leave, annual leave and sick leave. The parties agreed to defer the issue of class certification until after the liability issues were considered on motions for summary judgment. Each side has so moved. For the reasons set forth below, the Court GRANTS–IN–PART and DENIES–IN–PART the plaintiffs' motion, and GRANTS–IN–PART and DENIES–IN–PART the defendant's motion.

## I. BACKGROUND [1]

This case presents what appears, on the surface, to be a fairly simple and straightforward question: When employees who nor-

---

1. Although counsel for the parties had not signed it, a "Joint Stipulation of Facts" ("Joint Stip.") was submitted as Ex. 1 to the Supplemental Appendix to Plaintiff's Reply Memorandum. De-

fendant raised no objection to this, and the Court presumes that it is does reflect the agreement of the parties as to the facts contained.

mally earn additional pay because they work less-desirable shifts (weekends and/or nights) take paid leave, do they get the same pay (including the additional) that they would have received for working? The matter is complicated, however, by the fact that the question is posed for three distinct groups of VHA employees: registered nurses ("RNs"), the group to which plaintiff Thelma Curry once belonged; "hybrids," a group comprising various allied health professionals, including licensed vocational nurses ("LVNs") such as the other named plaintiff, Yolanda Quimby; and the group made up of physician assistants ("PAs") and expanded function dental auxiliaries ("EFDAs").[2] It is further complicated by the fact that there are four different types of paid leave involved, under statutes in two different titles of the United States Code, which may apply to the different groups in different ways.

Congress created the VHA (originally the VA Department of Medicine and Surgery) in 1946 "to provide a complete medical and hospital service for the medical care and treatment of veterans." 38 U.S.C. § 7301(b) (2000). Given the impending return of military personnel from World War II and, hence, the coming vast increase in the number of veterans, Congress invested the VHA with a personnel system independent of the civil service. *Id.* §§ 7401–74. The Title 38 system provides the Secretary of the Department of Veterans Affairs ("VA") greater flexibility in hiring, firing and compensating employees than otherwise available under the Title 5 system.

## A. "Leave with pay" provisions

The employment status of federal workers, as well as the rights, emoluments and privileges pertaining thereto, generally are governed by Title 5 of the United States Code. Chapter 63 of that title contains the four provisions authorizing "leave with pay" that are relevant here: annual accrued leave, 5 U.S.C. § 6303; sick leave, 5 U.S.C. § 6307; court leave,[3] 5 U.S.C. § 6322; and military leave, 5 U.S.C. § 6323. Title 5, standing alone, would entitle hybrid VHA employees,[4] and PAs and EFDAs, to all four types of leave; but VHA RNs are entitled only to court and military leave under this Title. *See* 5 U.S.C. § 6301(2)(v) (expressly excluding VHA nurses from the definition of employee for the annual and sick leave subchapter of Chapter 63, 5 U.S.C. §§ 6301–12).

## B. "Additional pay" provisions

Registered nurses are entitled to receive a form of premium pay, called "additional pay," under 38 U.S.C. § 7453. Additional pay is awarded for night work (work between 6 p.m. and 6 a.m.), *id.* § 7453(b), and for weekend work (work shifts any part of which fall between midnight Friday and midnight Sunday), *id.* § 7453(c). Physician assistants and EFDAs are entitled to this same additional nighttime and weekend pay, per 38 U.S.C. § 7454(a). Hybrids are currently entitled to the same additional weekend pay under 38 U.S.C. § 7454(b)(2) (Supp. II 2002), and are eligible for the same additional nighttime pay under 38 U.S.C. § 7454(b)(1) (Supp. II 2002). Under 5 U.S.C. § 5545(a)(2), federal employees receive nighttime premium pay while on paid leave to the extent that the total amount of leave taken in a pay period is less than eight hours.[5]

## C. Employee Status

"[T]he hours and conditions of employment and leaves of absence" of RNs, PAs and EFDAs are governed by VA regulation under 38 U.S.C. § 7421(a). Registered nurses, PAs and EFDAs (but not hybrids) are also excepted from various subchapters of Title 5, *see* 38 U.S.C. § 7425(a), none of which is at

**2.** Since neither named plaintiff is a PA or EFDA, the Court recognizes that any conclusions as to the law applicable to their paid leave might turn out to be mere dictum, depending on the deferred question of class certification. At oral argument, defendant's agency counsel stated that there were only three or four EFDAs in the entire country. Tr. (Nov. 18, 2003) at 100.

**3.** Court leave is leave for jury or witness duty.

**4.** "Hybrids" are so-called because they are governed in some respects by Title 38 and in other respects by Title 5. *See James v. Von Zemenszky,* 284 F.3d 1310, 1314 (Fed.Cir.2002).

**5.** Throughout this opinion, the Court shall refer to this limitation as the Title 5 "eight-hour rule."

issue here. Registered nurses, PAs and EFD As are federal employees appointed by the VA Secretary under 38 U.S.C. § 7401(1). Hybrids are federal employees appointed by the VA Secretary under 38 U.S.C. § 7401(3). The Secretary's regulatory power to prescribe "the hours and conditions of employment and leaves of absence" does not apply to hybrids. *See* 38 U.S.C. § 7421(b). Provisions of Title 5 which are "inconsistent with any provision" of Chapter 74 of Title 38 (38 U.S.C. §§ 7401–74) are not "considered to supersede, override, or otherwise modify such provision," unless the latter is specifically referenced by the former. 38 U.S.C. § 7425(b).

## D. Plaintiffs' pay history and VHA practice

The Title 38 system originally included medical personnel such as RNs, as well as nurse anesthetists, PAs and EFDAs.[6] Hybrids, including certified or registered respiratory therapists, licensed physical therapists, licensed practical nurses, LVNs, pharmacists, and occupational therapists, were not included in the original Title 38 personnel scheme. *See* Def.'s Opp. at 7–9.

Both plaintiffs in the case at bar customarily and regularly received ten percent additional pay for nighttime work when their work shifts occurred between 6:00 p.m. and 6:00 a.m. Joint Stip. ¶ 3. When only part of the shift occurred during night hours, if at least four hours of the shift occurred within those night hours, then the employee received the additional pay for the entire shift. 38 U.S.C. § 7453(b); *see id.* § 7454(b)(1). If less than four hours occurred within the night hours, then the employee received the additional pay only for the actual time worked between 6:00 p.m. and 6:00 a.m. *Id.*

Prior to 1997, the plaintiffs customarily and regularly received twenty-five percent additional pay for every hour worked on a shift, if any part of the shift occurred between midnight Friday and midnight Sunday.

*See* Joint Stip. ¶¶ 3, 4, 7; 38 U.S.C. §§ 7453(c), 7454(b)(2). Presently, all hybrids receive this weekend premium pay; prior to January 1, 2002, hybrids received weekend additional pay only if they were individually designated as eligible by the Director of the VHA facility where they were employed. Plaintiff Quimby was so designated. Joint Stip. ¶ 7.

The Court of Appeals for the Federal Circuit held in *Armitage v. United States*, 991 F.2d 746 (Fed.Cir.1993), that federal civilian police are entitled to Sunday premium pay for regularly scheduled Sunday work while on annual or sick leave. The VA implemented the *Armitage* holding in PAID teletype 93–047G3–36 (DVA Oct. 1, 1993): "Hybrid employees who are paid premium pay under title 38, are entitled to premium pay while on paid leave for regularly scheduled nonovertime Saturday and Sunday hours." Pls.' App. at 35. Congress, in the Treasury and General Government Appropriations Act, Pub.L. No. 105–61, § 636, 111 Stat. 1272, 1316 (1997) ("1997 Appropriations Act"), barred all federal agencies from using any appropriation in any fiscal year to pay Sunday premium pay for Sundays not actually worked.[7]

Nighttime additional pay was and is included in the computation of pay for periods of paid annual leave and sick leave for RNs, PAs and EFDAs who were regularly scheduled to work at night and who used less than eight hours of paid leave within a pay period. Joint Stip. ¶ 11. Weekend additional pay has never been included in their pay for periods of paid annual leave and sick leave. *Id.* ¶ 13. For military leave and court leave, nighttime additional pay was and is included in the pay of RNs, PAs and EFDAs, regardless of the amount of time involved. *Id.* ¶ 12. Weekend additional pay was also included in their pay for military and court leave until October, 1997. *Id.* ¶ 13.

If regularly scheduled to work at night, hybrids are and have been paid nighttime

---

**6.** Plaintiff Thelma Curry, formerly an RN, is no longer employed by VHA. *See* Joint Stip. ¶ 2.

**7.** The 1997 Appropriations Act extended to all federal agencies a prohibition that originally applied only to FAA employees. *See* Department of

Transportation and Related Agencies Appropriations Act, Pub.L. No. 103–331, 108 Stat. 2471, 2475 (1994) (referencing 5 U.S.C. § 5546(a) ("Pay for Sunday and holiday work")).

additional pay during periods of paid annual and sick leave if less than eight hours of leave are taken during a single pay period. Joint Stip. ¶ 9. They receive the nighttime additional pay for periods of court and military leave, without any limitation. *Id.* From approximately October 1993 to October 1997, weekend additional pay for regularly scheduled Saturday and Sunday hours was included in hybrid employees' pay during periods of paid annual and sick leave. *Id.* ¶ 10. It was also received by them for periods of court and military leave prior to October, 1997. *Id.* Since approximately November of 1997, following the passage of the 1997 Appropriations Act, such weekend pay has not been included in hybrids' pay for periods of paid leave. *Id.*

## II. DISCUSSION

The Court is thus presented with a rather complicated task of statutory interpretation. The Court will wind through the maze in the following manner, for each group of VHA employee (hybrids, RNs, and PAs/EFDAs). First, the source of an entitlement to any additional pay will be identified, and then the source of an entitlement to any type of paid leave. Next will be ascertained whether an entitlement to any additional pay while on leave exists. Then it will be determined whether any statutory restriction applies to the receipt of additional pay while on leave, including inconsistent provisions of Chapter 74 pursuant to 38 U.S.C. § 7425(b). And finally, it will be determined whether the VA Secretary's authority to promulgate regulations governing certain VHA employees' hours and conditions of leaves of absence, under 38 U.S.C. § 7421(a), had been exercised to limit any additional pay to which an employee might otherwise have been entitled.

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Rules of the United States Court of Federal Claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An outcome-determinative fact is a material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party may show the "absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The issues of liability in this case turn solely on questions of the interpretation of statutes (and regulations), which are questions of law that may be decided on a motion for summary judgment. *Santa Fe Pac. R.R. Co. v. United States,* 294 F.3d 1336, 1340 (Fed.Cir.2002).

### B. Hybrids

#### 1. *Entitlement to additional pay*

Under 38 U.S.C. § 7454(b)(1), hybrids are eligible to receive nighttime additional pay on the same basis as RNs. The Secretary has exercised this authority and designated plaintiff Quimby, among others, as an employee who receives nighttime additional pay. Under subsection (b)(2) of section 7454, hybrids are currently entitled to receive weekend additional pay on the same basis as RNs.[8] The RN entitlement to weekend pay, as set forth in 38 U.S.C. 7453(c), authorizes a twenty-five percent per hour premium for an entire shift, if any part of the shift falls between midnight Friday and midnight Sunday.

#### 2. *Entitlement to leave*

Section 6301 of Title 5 defines those federal employees who are entitled to annual leave and sick leave under sections 6303 and 6307,

---

8. Department of Veterans Affairs Health Care Programs Enhancement Act of 2001, Pub.L. No. 107-135, § 121(a), 115 Stat. 2446, 2450 (effective Jan. 23, 2002). *Prior to the enactment of* subsection (b)(2), hybrids had only statutory eligibility—not entitlement—to receive weekend additional pay on the same basis as do nurses

under section 7453. The parties have stipulated that the hybrid plaintiff received both types of additional pay. *See* Joint Stip. ¶¶ 3, 7. While the Secretary possesses the discretion to discontinue the payment of nighttime additional pay to hybrids, until this discretion is exercised, designated hybrids are entitled to this additional pay.

respectively. Eligible persons are employees as defined for purposes of Title 5, in 5 U.S.C. § 2105.[9] *See* 5 U.S.C. § 6301(2)(A). That provision includes within its scope persons appointed by Presidential appointees. *See Id.* § 2105(a)(1)(A), (D). Hybrids are appointed under section 7401(3) of Title 38 by the VA Secretary and thus qualify as employees under sections 2105 and 6301 of Title 5.[10] Hence, hybrids are entitled to annual and sick leave in accordance with the applicable provisions of Title 5. As for court leave, 5 U.S.C. § 6322, and military leave, 5 U.S.C. § 6323, these provisions also specifically apply to persons defined as employees under 5 U.S.C. § 2105. Therefore, hybrids are also entitled to court and military leave.

### 3. Entitlement to additional pay while on leave

The Federal Circuit has very clearly held that the Title 5 "leave with pay" statutes entitle federal employees to the "customary and regular pay" they would have received had they worked the leave hours, including any premium pay. *Lanehart v. Horner,* 818 F.2d 1574, 1583 (Fed.Cir.1987); *Armitage,* 991 F.2d at 751. These statutes apply to hybrids; therefore, the hybrids should be entitled to additional pay when on leave.

The defendant contends, however, that because section 7453 makes additional pay available only for employees who are "performing service," hybrids are not entitled to have additional pay included in their pay while on leave. *See* Def.'s Opp. at 13–14.

But this argument has been made to and rejected by the Federal Circuit twice already. In *Lanehart,* the Circuit was presented with the question of whether federal firefighters could have their normal pay reduced when they take authorized, paid leave. The reduction had been due to an interpretation of a provision of the Fair Labor Standards Amendments of 1974, which prescribed that overtime pay be calculated based only on "those hours during which the employee is actually on duty." *Lanehart,* 818 F.2d at 1576. The Federal Circuit determined that the issue was resolved through interpretation of the Title 5 "leave with pay" provisions, and not the Title 29 overtime provision, *id.* at 1578–79, and that the former "prevent any reduction in the customary and regular pay of the appellants, including overtime pay under Title 29 to which they would be entitled" if they had worked during the leave period. *Id.* at 1583 (footnote omitted). It did not matter how the overtime pay was calculated, for it was paid leave that was at issue.

Similarly, in *Armitage,* the Federal Circuit considered "Sunday premium pay" that was defined in the statute as being owed to "[a]n employee who *performs work* during a regularly-scheduled 8–hour period of service" and as covering a full shift, any "part of which is *performed* on Sunday." *Armitage,* 991 F.2d at 748 (quoting 5 U.S.C. § 5546(a) (adding emphasis)). The government's argument that the Sunday premium pay statute "requires that only '[a]n employee who performs work' is eligible to receive Sunday premium

---

9. There are several categories that are excepted from this definition in section 6301, including physicians, dentists, and RNs in the VHA. 5 U.S.C. § 6301(2)(v).

10. Part of the definition of "employee" under section 2105 is that the person be "appointed in the civil service." 5 U.S.C. § 2105(a)(1). Registered nurses, PAs, EFDAs and (to some extent) hybrids are outside of the Title 5 civil service system. But that does not seem to remove them from the section 2105 definition. If these VHA employees could not under any circumstances be considered members of the "civil service," then it would have been unnecessary for Congress to exempt VHA employees in section 6301(2)(v) from being subject to the provisions of subchapter I of Chapter 63 of Title 5. Because Congress did specifically exempt RNs, this statutory language indicates that, but for that exception, the

particular Title 5 provisions would apply to RNs. *See also* 38 U.S.C. § 7425 (exempting nurses and certain other VHA employees from several portions of Title 5 and recognizing that provisions of Title 5 which are not inconsistent with provisions of Title 38, Chapter 74 may apply to VHA employees). Furthermore, the Federal Circuit in *James v. Von Zemenszky* stated that Title 5 should be understood as a set of default rules applicable to VHA employees in the absence of a contrary provision in Title 38. *See Von Zemenszky,* 284 F.3d at 1320 ("Based on the general framework of title 5 discussed above, it is assumed that, absent other overriding provisions of law, title 5 applies to executive agencies such as DVA"). Title 5 could not, of course, be considered a set of default rules to VHA employees if these people were not to some extent deemed in the "civil service" for the purposes of section 2105.

pay," *id.* at 750, was rejected as contrary to *Lanehart.* *Id.* Once again, the entitlement to the premium was based on the text of the "leave with pay" statutes themselves, and not the statute creating the premium. The Federal Circuit identified the language contained in the Title 5 nightwork premium statute as an example of Congress "know[ing] how to limit the amount of premium pay earned by an employee while on authorized leave." *Id.* That provision expressly defined the nightwork for which an employee is entitled to premium pay as "periods of leave with pay during these hours if the periods of leave with pay during a pay period total less than 8 hours." *Id.* n. 5 (quoting 5 U.S.C. § 5545(a)(2)). The specific reference to leave pay was viewed as a *limitation* on what an employee otherwise would receive, under the "leave with pay" statutes.

The situation of the hybrids cannot be distinguished from these precedents. The statute governing their receipt of additional pay provides that the Secretary may designate them to receive nighttime additional pay "on the same basis as provided for nurses in section 7453," and now entitles them to additional weekend pay "on the same basis as provided for nurses in section 7453(c)." 38 U.S.C. § 7454(b)(1), (2). Section 7453 may define additional pay as an entitlement when a nurse is "performing service on a tour of duty," *see id.* § 7453(b)-(c), but this provision by its own terms has *nothing* to do with leave. Just like the Title 29 provision at issue in *Lanehart,* and the Sunday premium considered in *Armitage,* it does not define how much pay an employee receives while on leave. And as *Armitage* stressed, the provision's lack of any language expressly limiting its application to paid leave means that it does not itself contain any such limit. Silence on this score means that the amount of premium pay that can be received while on leave is determined by the "leave with pay" statutes themselves. And the Federal Circuit has clearly held that the "leave with pay" statutes entitle employees to receive the same pay they would have received had they worked. *Lanehart,* 818 F.2d at 1583; *Armitage,* 991 F.2d at 751.

The defendant also contends that, because hybrids' entitlement to additional pay in section 7454(b) is "on the same basis as provided for [RNs] in section 7453," this means that the hybrids must be treated the same as RNs for purposes of receipt of additional pay while on leave. Def.'s Opp. at 34–35. The specific entitlement, if any, of RNs to additional leave pay is discussed below. But this argument is just a variation on the one dispatched above. The purpose of the quoted statutory language is not to determine the hybrids' leave pay, but their pay while working. Their leave pay, while based on any additional or premium pay they regularly and customarily received, is determined under the "leave with pay" statutes, which the Federal Circuit has held permit no reduction in pay while on leave. The use of legislative shorthand to incorporate for hybrids the particular eligibility standards for additional pay set forth in section 7453(b), for nighttime pay, and 7453(c), for weekend pay, does not somehow silently exempt them from sections 6303 and 6307 (the leave provisions which do not apply to RNs), or tie their leave pay to that of RNs.

The Government argues that 38 U.S.C. § 7453(i) indicates a Congressional intent not to provide additional pay for authorized leave. *See* Def.'s Opp. at 36–37; *see also id.* at 14–15. Section 7453(i) provides:

Any additional pay paid pursuant to this section shall not be considered as basic pay for the purposes of the following provisions of title 5 (and any other provision of law relating to benefits based on basic pay):

> (1) Subchapter VI of chapter 55.

> (2) Section 5595.

> (3) Chapters 81, 83, 84, and 87.

38 U.S.C. § 7453(i). The referenced portions of Title 5 concern the payment of lump-sums for accumulated and accrued leave on separation (§ 5551), severance pay (§ 5595), work injury compensation (Chapter 81), retirement (Chapters 83–84), and life insurance (Chapter 87). The Government primarily focuses on the lump-sum on separation from service, section 5551 of Title 5. It reasons that since this section provides that the "lump-sum payment shall equal the pay (excluding any differential under section 5925 and any allow-

ance under section 5928) the employee would have received had he remained in the service until the expiration of the period of the annual and vacation leave," 5 U.S.C. § 5551(a), "the only logical conclusion" is that the additional pay cannot be received when on annual leave. Def.'s Opp. at 14–15. It also notes that while section 7453(i) implies that the lump-sum benefits are based on "basic pay," section 5551 is instead based on "the pay" an employee taking leave would have received, and thus the adjective "basic" in section 7453(i) may safely be ignored. *See* Def.'s Reply at 14–17.

Defendant thus would have the section 7453(i) exclusion apply to all statutes basing benefits on pay, including the leave statutes at issue in this case. But "when Congress has intended to exclude certain types of remuneration from a pay statute it has done so with clarity." *Lanehart,* 818 F.2d at 1582. Congress has "with clarity" determined via section 7453(i) that lump-sum separation pay should not include additional pay. It has also determined that the additional pay is excluded from several other benefits, some of which are defined in terms of "basic pay," *see* 5 U.S.C. §§ 5595(c), 8331(3), 8401(4), and others in terms of "monthly pay" or "annual pay," *see* 5 U.S.C. §§ 8114, 8704(c).[11] Defendant suggests that, in using "basic pay" to refer to benefits that do not include this term, Congress "may not have been as precise in its use of language in section 7453(i), as is ordinarily assumed to be the case." Def.'s Reply at 15. But if Congress were over-inclusive in listing benefits it thought were based on "basic pay," the response should not be to construe the statute to be *even more over-inclusive,* by excluding additional pay from all benefits based on pay. That is not interpreting, it is legislating— which is not a job of the courts.

Nor is it "the only logical conclusion" that Congress intended to exclude additional pay from pay while on annual leave and sick leave, by excluding it from the lump-sum payment upon separation. Indeed, it would appear rather illogical for Congress to effect this result through such a roundabout course. It strains credulity to suggest that Congress would remove additional pay from sick leave, by removing it for lump-sum payments that are based (but for this removal) on annual leave with pay amounts—as this has nothing to do with sick leave. In any event, the most logical conclusion is that Congress meant what it did and did what it meant—excluding the additional pay only from the lump-sum separation pay calculation, the other benefits enumerated, and any provisions basing benefits on basic pay.[12]

*Special Rule for Weekend Additional Pay*

As is recounted above, following *Lanehart,* the Federal Circuit in *Armitage* held that the Title 5 "leave with pay" statutes entitled covered employees to take Sunday premium pay while on paid leave. *Armitage,* 991 F.2d at 750. In response, Congress forbade all executive agencies from paying any Sunday premium pay to employees on paid leave. 1997 Appropriations Act, § 636, 111 Stat. at 1316. The VA interpreted this as forbidding the payment of any *weekend* additional pay to employees on leave, not just weekend additional pay for shifts falling between midnight Saturday and midnight Sunday. A little more than one month after Congress enacted the prohibition, the VA issued an internal bulletin stating:

> Language in Public Law 105–61, section 636, specifies that Sunday premium pay shall not be paid 'to any employee unless such employee actually performed work during the time corresponding to such pre-

---

11. It bears mentioning that all of these other provisions expressly include one type of premium pay in their definition of pay—the annual pay for standby status allowed under 5 U.S.C. § 5545(c)(1). *See* 5 U.S.C. §§ 5595(c), 8114(e), 8331(3)(c), 8401(4) (incorporating definition from section 8331(3)), 8704(c)(1).

12. Moreover, this is far from anomalous or inexplicable. If indeed Congress's intent in making available additional pay under sections 7453 and 7454 were to make employment with the VHA more attractive to prospective employees who might otherwise go to the private sector, *see, e.g.,* Def.'s Opp. at 5, then it would be consistent with that intent to include this additional pay within checks for paid leave. It would also be rational not to provide that additional pay as part of a separated employee's severance package under 5 U.S.C. § 5551; for if the employee is leaving, why provide him with benefits whose purpose was to keep him with the VHA?

mium pay.' This language, therefore, prohibits the payment of Sunday (and Saturday) pay for periods of military leave, court leave, continuation of pay and all other absences in which the employee is not performing work.

Pls.' App. at 38 (OFM Bulletin 97GA2.11, Nov. 14, 1997).

The VA has misinterpreted the plain language of section 636 of the 1997 Appropriations Act and, in failing to provide weekend additional pay under section 7454(b)(2) as part of authorized leave to hybrids for shifts normally and customarily worked between midnight Friday and midnight Saturday, has overstepped its authority. Section 636 requires only that "no part of any appropriation contained in this Act or any other Act for any fiscal year shall be available for paying Sunday premium pay to any employee unless such employee actually performed work during the time corresponding to such premium pay." 111 Stat. at 1316. "[W]here, as here, the words of the statute are unambiguous, the 'judicial inquiry is complete.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). When Congress said "Sunday," the Court presumes that Congress meant "Sunday" and not "Saturday and Sunday." [13] Therefore, the pre-existing entitlement under 38 U.S.C. §§ 7453(c), 7454(b)(2) for Saturday work remained unaffected by the 1997 Appropriations Act, and *Armitage's* interpretation of the Title 5 "leave with pay" statutes applies.

There still remains some interpretive work, however. While the text of the 1997 Appropriations Act provision did not expressly reference 5 U.S.C. § 5546(a), the Sunday premium pay at issue in *Armitage* came from

this source, which requires the addition of "premium pay at a rate equal to 25 percent of [an employee's] rate of basic pay" to an employee's pay when he works a "regularly scheduled 8–hour period of service which is not overtime … a part of which is performed on Sunday." 5 U.S.C. § 5546(a). The only reasonable conclusion is that Congress intended to ban the payment of a premium for leave taken for a shift that qualifies under this Sunday premium condition. The plaintiffs argue that the 1997 Appropriations Act provision has no application to the VHA employees, who receive not "Sunday premium pay" but instead "additional pay" for tours of duty falling in part between midnight Friday and midnight Sunday. *See* Pls.' Reply at 37–45. But Congress began the prohibition with the expansive phrase "[n]otwithstanding any other provision of law," which indicates that it was not confining itself to any one statute that provides for Sunday premium pay. The Court concludes that, to the extent section 7453(c) provides additional pay that is equivalent to the section 5546(a) Sunday premium—that is, for an entire shift because part of it falls on Sunday—then the 1997 Appropriations Act repealed this entitlement for purposes of paid leave.

But section 7453(c) entitles VHA employees to this additional pay for "a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday." If Sunday is taken out of the equation, by truncating the additional pay period at Saturday midnight, then a hybrid could still receive additional pay for leave taken on a Sunday, if a part of his tour of duty fell on Saturday (since the additional pay is for the entire tour of duty). On the other hand, if the 1997 Appropriations Act prohibition is read to cover all premium pay-

---

**13.** The defendant argues that, in enacting the 1997 Appropriations Act provision, Congress "signal[ed] its disapproval of extending 'leave with pay' provisions to require additional or premium pay for hours not actually worked." Def.'s Opp. at 32. But clearly "Sunday" does not mean "Saturday and Sunday," nor does it mean "nighttime." And the only signal that counts is the law itself; "the Congress does what it says and means what it says." *Contreras v. United States*, 64 Fed.Cl. 583, 592 (2005); *see also Be-*

*dRoc Ltd. v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (plurality opinion) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *Conn. Nat'l Bank*, 503 U.S. at 253–54, 112 S.Ct. 1146).

ments that meet the Sunday premium definition—that is, "a period of service . . . a part of which is performed on Sunday"—then this would also disallow the additional pay for leave taken on a Saturday whenever the tour of duty carries over into Sunday. The Court concludes that the latter option is the best interpretation of the effect of the prohibition. Just as another federal employee who would receive the Sunday premium if she worked from 5 p.m. Saturday through 1 a.m. Sunday would lose the premium if on leave, so, too, a hybrid who works those same exact hours should not receive the additional pay when on leave.

### 4. Limitations on entitlement to additional pay while on paid leave

Section 5545(a)(2), the source of the eight-hour rule for nighttime additional pay taken on leave, applies to "an employee in or under an Executive agency." 5 U.S.C. § 5541(2)(A). Hybrids are such employees. At first glance it would appear, then, that they can take nighttime additional while on paid leave only to the extent that such leave for the period totals less than eight hours.

Upon closer analysis, however, it becomes clear that the eight-hour rule does not apply to hybrids. The statutory source for that rule—section 5545(a)—contains two elements. First, it defines nighttime work. Second, it provides a limitation on nighttime work for the purposes of paid leave. *See Armitage*, 991 F.2d at 750 (characterizing the eight-hour rule as a "limitation," and an action "to limit the amount of premium pay earned by an employee while on authorized leave"). As noted, section 5545(a) applies facially to all plaintiffs in this case. But Section 7425 of Title 38 states that "[n]otwithstanding any other provision of law, no provision of title 5 . . . which is inconsistent with any provision of . . . this chapter shall be considered to supersede, override, or otherwise modify such provision" unless the former specifically references the provision of Chapter 74 "to be superseded, overridden, or otherwise modified." 38 U.S.C. § 7425(b).

Section 5545(a) contains no reference to any provision in chapter 74 of Title 38. Therefore, section 5545(a) cannot modify or

supersede any provision of chapter 74. The entitlement to nighttime additional pay for hybrids comes from chapter 74. That entitlement defines nighttime work, for the purposes of additional pay, differently from how nighttime work is defined in section 5545(a). *Compare* 38 U.S.C. § 7453(b) (providing nighttime additional pay for an entire shift if four or more hours fall between 6 p.m. and 6 a.m., and otherwise "for each hour of service performed between those hours") *with* 5 U.S.C. § 5545(a) (defining nightwork as "regularly scheduled work between the hours of 6:00 p.m. and 6:00 a.m."). If the nightwork provision is inconsistent with and thus does not override the nighttime additional pay provision, its eight-hour rule should also not apply to hybrids. This conclusion is also compelled by the Federal Circuit's determination that the rule reflected an action of Congress to limit nightwork pay when an employee is on paid leave. *See Armitage*, 991 F.2d at 750. Congress made a conscious choice to define the nightwork premium with a limit on the ability of an employee to receive it while on leave, and, absent this limit, the employee's pay while on authorized leave would not have been diminished. Congress made no such choice in creating the nighttime additional pay entitlement, an inconsistency which section 5545 cannot "supersede, override, or otherwise modify" absent an express reference.

Section 5545(a) cannot apply of its own force to an employee who earns nighttime additional pay pursuant to Title 38, and this includes its eight-hour rule. Although hybrids take paid leave pursuant to the Title 5 statutes, they customarily and regularly earn additional pay pursuant to Title 38, and thus cannot be subject to the section 5545 eight-hour rule.

### 5. Contrary provisions under 38 U.S.C. §§ 7421(a), 7425(b)

As was just discussed, subsection (b) of section 7425 provides that no provision of law "pertaining to the civil service system" shall be considered to "supersede, override, or otherwise modify" any provision of Chapter 74 of Title 38, unless the contrary provision specifically provides, by cross-reference, for

such a result. Although the defendant has presented the Court with numerous examples of VA regulations adopted pursuant to Title 38 authority, it has not shown the Court any statutory provision in Title 38 that conflicts with the Title 5 "leave with pay" provisions. The Federal Circuit has held that section 7425(b) concerns "a conflict between statutory provisions in title 5 and title 38," not a conflict with a regulation or policy adopted under title 38. *Von Zemenszky,* 284 F.3d at 1320. The "notwithstanding" power of section 7425(b) is summoned by provisions of Chapter 74 of Title 38, not by regulations. Hence, hybrids cannot be deprived of their entitlement to additional pay while on leave simply because of contrary regulations. Moreover, hybrids are not subject to the VA Secretary's broad regulatory power under section 7421(a). *See* 38 U.S.C. § 7421(b) (list of positions for which Secretary shall, "[n]otwithstanding any law, Executive order, or regulation ... prescribe by regulation the hours and conditions of ... leaves of absence," *id.* § 7421(a), does not include hybrids).

### 6. *Summary for hybrids*

 Hybrids are entitled, under Title 5, to annual, sick, court and military leave. Hybrids are eligible under Title 38 to nighttime additional pay, and plaintiff Quimby has received an entitlement to that pay by the Secretary's designation. Hybrids are also entitled under Title 38 to weekend additional pay. When on authorized paid leave of any type, the designated hybrids are entitled to nighttime additional pay for shifts customarily and regularly worked between the hours of 6 p.m. and 6 a.m., and are not subject to the eight-hour limit. When on authorized paid leave of any type, hybrids designated as recipients of weekend additional pay from October 1, 1997 to January 23, 2002, and all hybrids since January 23, 2002, are entitled to weekend additional pay for shifts customarily and regularly worked, any part of which fall between the hours of midnight Friday and midnight Saturday, with the exception of shifts falling in part on Sunday. As for leave taken prior to October, 1997, because of the 1997 Appropriations Act, hybrids designated as recipients of weekend additional pay are entitled to that pay while on leave for hours customarily and regularly worked on shifts any part of which fell on Saturday or Sunday.

### C. Registered Nurses

#### 1. *Entitlement to additional pay*

Under 38 U.S.C. § 7453(b), RNs are entitled to nighttime additional pay. Under subsection (c) of the same, RNs are entitled to weekend additional pay.

#### 2. *Entitlement to leave*

As noted above, 5 U.S.C. § 6301 defines those federal employees who are covered by the Title 5 "leave with pay" provisions for annual and sick leave. Subsection (2)(v) of section 6301 expressly excepts RNs from coverage under those leave provisions. The exception, by its own terms, applies only to subchapter I of Chapter 63 of Title 5. The Title 5 "leave with pay" provisions for court and military leave are found within subchapter II of Chapter 63 of Title 5. Therefore, to determine whether RNs are covered by the court and military leave statutes, the Court must refer to those provisions themselves. Both sections 6322 and 6323 apply expressly to persons who come within the definition of employee contained in 5 U.S.C. § 2105. As is discussed above, any individual appointed by the VA Secretary would be an employee under 5 U.S.C. § 2105(a)(1)(D). Registered nurses are appointed by the VA Secretary under 38 U.S.C. § 7401(1), and are therefore employees under the section 2105 definition. Absent any contrary provision of law, RNs would thus be entitled to military and court leave under sections 6322 and 6323 of Title 5.

Although the Title 5 "leave with pay" statutes are default provisions, *see Von Zemenszky,* 284 F.3d at 1320, if a contrary or conflicting regulation has been promulgated pursuant to the VA Secretary's section 7421 power, that regulation trumps anything in Title 5. Section 7421 provides:

Notwithstanding any law, Executive order, or regulation, the Secretary shall prescribe by regulation the hours and conditions of employment and leaves of absence of employees appointed under any provision of this chapter in positions in the Veterans

Health Administration listed in subsection (b).

38 U.S.C. § 7421(a). The subsection (b) list contains, among others, the positions of RNs, PAs, and EFDAs. *See* 38 U.S.C. § 7421(b)(5)-(7).

Matters are confused somewhat by the manner in which the VA Secretary has chosen to exercise this broad discretionary power. Instead of promulgating formal regulations via notice and comment, "DVA has set forth its interpretation of the title 38 personnel provisions in the form of manuals, directives, and handbooks." *Von Zemenszky*, 284 F.3d at 1318–19. Since the Secretary is required to "prescribe by regulation" the "conditions of . . . leaves of absences," 38 U.S.C. § 7421(a), the Court will assume that these manuals, directives, and handbooks constitute "regulation." The VA Handbook expressly provides that RNs "shall be granted" both military and court leave "in the same manner as other Federal employees." Pls.' App. at 66–67 (VA Handbook 5011, pt. III, ch.3, ¶¶ 7(a)(1), 7(b) (Apr. 15, 2002)). Accordingly, RNs derive their right to military and court leave from Title 38, although that right is by regulation identical to that enjoyed by other federal employees under Title 5. As noted above, the Title 5 statutes providing for annual and sick leave do not apply to RNs. Thus, the rights, if any, that RNs have to those types of leave must derive from the VA Secretary's section 7421(a) regulatory power. The VA Handbook expressly provides that annual and sick leave "shall accrue" for RNs. Pls.' App. at 71 (VA Handbook 5011, pt.III, ch.3, ¶ 6(d)(2) (Apr. 15, 2002)).

### 3. *Entitlement to additional pay while on leave*

None of the Title 5 "leave with pay" statutes directly applies to RNs: the annual and sick leave provisions are facially inapplicable; and the military and court leave provisions are in theory displaced by the Secretary's regulations issued pursuant to section 7421(a) (although these are contained in a Handbook which seemingly incorporates the Title 5 provisions). Therefore, if RNs are entitled to additional pay while on paid leave, it must be by virtue of the regulations promulgated under section 7421(a).

Registered nurses are entitled to military and court leave granted "in the same manner as other Federal employees." Other federal employees are entitled to court leave "without loss of, or reduction in, pay," 5 U.S.C. § 6322(a), and to military leave "without loss in pay." 5 U.S.C. § 6323(a)(1). As the Federal Circuit made plain in *Lanehart*, these statutes mean what they say, and entitle employees to the same pay they would have received had they been working the customary and regular hours for which they have taken the leave. *See Lanehart*, 818 F.2d at 1579–83. Accordingly, RNs are entitled to nighttime additional pay while on court or military leave,[14] and to weekend additional pay while on court or military leave—although they cannot receive weekend additional pay, after September, 1997, as part of paid court or military leave for any tour of duty a part of which falls on a Sunday, per the Court's interpretation of the relevant provision of the 1997 Appropriations Act.

As for annual and sick leave, RNs' entitlement is not predicated upon what other federal employees receive. The right of VHA registered nurses to annual and sick leave derives from VA regulations. The VA Secretary has expressly limited the receipt of nighttime additional pay while on annual or sick leave to pay periods during which fewer than eight hours of leave is taken.[15] Def.'s

---

14. They are not subject to the eight-hour rule, for this is a limitation on the scope of nightwork premium pay under 5 U.S.C. § 5545(a), and no similar restriction exists in section 7453(b).

15. The Court is somewhat concerned that the copy of VA Directive 5007 submitted by the government contains the relevant text in brackets, and does not have an effective date at the top of the page, unlike many other VA employment

regulations submitted. But as the plaintiffs have not objected to the authenticity and applicability of this Directive, the Court shall assume its validity. The Court also notes that the current version of VA Handbook 5007, *available at* http://www1.va.gov/ohrm/Directives-Handbooks/Direct_Hand.htm (last visited July 7, 2005), incorporates the language of VA Directive 5007, whereas the VA Handbook 5007 version issued April 15, 2002, *available at* http://www.va.gov/pubs/asp/edsdi-

App. at 6 (VA Directive 5007, ch.6, ¶ 1(a)(1) (no date)). The parties have stipulated that nighttime additional pay was and is included, subject to the eight-hour limitation, in the pay received by RNs on annual and sick leave. Joint Stip. ¶ 11. The parties have also stipulated that RNs have never received weekend additional pay for periods of paid annual and sick leave. *Id.* ¶ 13. The plaintiffs contend, however, that RNs are entitled to additional pay while on annual and sick leave.

A portion of a personnel policy manual for the VA, *see Scarnati v. Department of Veterans Affairs,* 344 F.3d 1246, 1249 (Fed.Cir. 2003), contains the following in its definition for "Pay Status":

> All periods of employment during which an employee is in a duty status for which he/she is *entitled to receive pay.* Includes all periods during which prescribed duties are performed for which pay is authorized *and periods of authorized annual and sick leave,* and excused leaves of absences without charge.

Pls.' App. at 49 (MP–6, pt.V, supp. 2.2, ch.1 (no date)) (emphasis added).[16] It also defines "sick leave" as a "[l]eave of absence with pay." *Id.* A review of this document online reveals that "annual leave" is similarly defined as a "[l]eave of absence with pay." MP–6, pt. V, supp. 2.2, ch. 1, ¶ 103.01(d), *available at* http://www.va.gov/publ/direc/finance/M6P5S201.htm (last visited July 7, 2005). The plaintiffs contend that the phrase "leave of absence with pay" should be construed to include additional pay, following *Lanehart. See* Pls.' Mot. Partial Summ. J. at 46–47, 53–55.

The Court, after oral argument, requested that the parties submit the specific provisions of the VA Handbook that vest the right in RNs, PAs and EFDAs to leave with pay for any type of leave. *See* Order (Mar. 8, 2005). The parties responded with a report, as re-quested. With this report, the plaintiffs submitted additional portions of the Handbook that clearly presuppose that employees receive pay while on leave, while the defendant stated that "there are no provisions that unequivocally grant employees an entitlement to pay while on leave or otherwise parallel the Title 5 leave with pay statutes discussed in *Lanehart v. Horner.*" Joint Status Report (Mar. 18, 2005) at 1–2. Reflecting upon the passages from the MP–6 manual quoted in the previous paragraph, it seems the Court used language in its request that was less than felicitous, as the entitlement to paid leave may well be expressed in sources other than the Handbook.

Nevertheless, the Court can determine, from the various snips from the Handbook and policy manuals, that RNs are indeed entitled to pay while on authorized sick and annual leave. For instance, the following policy cannot be explained unless pay accompanies authorized leave: "Neither annual nor sick leave shall be advanced to an employee when it is known that the employee will retire or be separated before the amount advanced can be earned, or when it is reasonable to expect that the employee will not return to duty." Pls.' App. at 52 (MP–5, pt.II, ch.7, ¶ 7(a)(3) (Oct. 30, 1998)).[17] Another provision from this manual stated "[a]nnual and sick leave shall accrue to a full-time nurse, nurse anesthetist, PA, EFDA, or part-time employee during each full biweekly pay period *while in a leave with pay status.*" *Id.* at 54 (MP–5, pt.II, ch.7 (Oct. 30, 1998)) (emphasis added); *see also id.* at 49. And the parties have stipulated to the varying treatment of additional pay as part of *paid* annual and sick leave for RNs. *See* Joint Stip. ¶¶ 11, 13.

The Secretary has the broad discretion, under Section 7421(a), completely to eliminate RNs' paid leave by regulation. He also has the discretion to determine, by regula-

---

rec.asp (last visited July 7, 2005), does not contain the additional language of VA Directive 5007.

**16.** This chapter applies to RNs, as it also states, "[f]or the purposes of this chapter a nurse means a registered nurse, nurse anesthetist, physician assistant (PA) or expanded function dental auxiliary (EFDA)." Pls.' App. at 49.

**17.** *But see* Pls.' App. at 66 (providing that annual and sick leave "may be advanced to a full-time nurse, nurse anesthetist, PA, or EFDA at any time") (VA Handbook 5011, pt.III, ch.3 (Apr. 15, 2002)).

tion, that he will only pay basic pay, or sometimes will pay additional pay but not other times, to RNs who are taking authorized leave. But this flexibility does not mean that paid leave, when granted, is some sort of gratuity that can be arbitrarily given or withheld as the VA sees fit. *Cf. Lanehart,* 818 F.2d at 1582 (characterizing the entitlement to court or military leave as a "contract between the government and its employees"). Merely because the Secretary may change the VA's policy by changing its regulations does not mean that the VHA RNs were not entitled to whatever the old policy promised while it was in force. Clearly, the Secretary can make basic pay, additional pay, or "no pay" the pay received when RNs are on leave. Under section 7421 this is to be done by regulation.

The Government, however, has produced no regulation that generally purports to limit the entitlement of pay while on leave to basic pay. No regulation defining "pay" for purposes of paid leave has been brought to the Court's attention. And even if the entitlement of RNs to receive *some* pay while on sick or annual leave is merely a tacit understanding, it is undisputed that RNs have been receiving pay while on annual and sick leave. *See* Joint Stip. ¶¶ 11, 13. The question at hand is how this pay is to be calculated. Strangely, the government argues that not only do the regulations not entitle RNs to additional pay while on leave, but that *section 7453 absolutely prohibits the Secretary from including additional pay in an RN's pay while on leave.* Tr. (Nov. 18, 2003) at 96; *see also* Def.'s Opp. at 13.

Yet the government concedes that nighttime additional pay, whose source is section 7453, is paid to RNs on court and military leave. Joint Stip. ¶ 12. And it concedes that this nighttime additional pay, subject to an eight-hour limitation, is paid to RNs for annual and sick leave. *Id.* ¶ 11. And it concedes that weekend additional pay was paid to RNs, before October, 1997, for court and military leave. *Id.* ¶ 13. For that matter, it also concedes that hybrids were paid weekend additional pay before October, 1997,

while on military and court leave, and were also paid this from October, 1993 to October, 1997 while on annual and sick leave.[18] *Id.* ¶ 10; *see also* Pls.' App. at 33–37. These actions cannot be squared with the litigation position that section 7453 prohibits the payment of additional pay unless earned by the performance of work.

The Secretary has adopted the policy of giving RNs annual and sick leave with pay. Just as the Federal Circuit recognized in *Lanehart* that "when Congress has intended to exclude certain types of remuneration from a pay statute it has done so with clarity," *Lanehart,* 818 F.2d at 1582, so, too, should the Secretary exercise his discretion in this area with clarity. The Secretary has done so with regard to the receipt of nighttime additional pay while on annual and sick leave, limiting the RNs' entitlement to paid leave totaling less than eight hours in a pay period. Def.'s App. at 6. The Secretary has not done so regarding weekend additional pay. In the absence of a regulation that speaks to this issue with clarity, the Court will follow the Federal Circuit's conclusion that when an entitlement to paid leave refers to pay, this "has consistently been construed for more than a century as encompassing the total compensation or remuneration normally and regularly received by an employee." *Lanehart,* 818 F.2d at 1581.

Accordingly, until the pay received while on paid leave is limited by regulation, RNs are entitled, while on annual and sick leave, to weekend additional pay for tours of duty customarily and regularly worked, any part of which falls between midnight Friday and midnight Saturday, except for tours of duty any part of which falls on Sunday (additional payment for which is prohibited by the 1997 Appropriations Act). Moreover, RNs were entitled, while on annual and sick leave, to weekend additional pay for hours customarily and regularly worked prior to October 1, 1997.

### 4. Limitations on entitlement to additional pay while on paid leave

The Court holds that the eight-hour rule, from 5 U.S.C. § 5545(a)(2), has no application

---

**18.** At oral argument, counsel for the government contended that the Secretary had made an "error" in giving the hybrids this additional pay. *See* Tr. (Nov. 18, 2003) at 102–05.

to RNs.[19] As noted above in the Court's discussion of hybrids, section 5545(a)(2) applies to employees of an executive agency. *See* 5 U.S.C. § 5541(2)(A). Registered nurses are such employees, *see* 38 U.S.C. § 7401(1), but, like hybrids, RNs are entitled to nighttime additional pay under 38 U.S.C. § 7453, which is inconsistent with and thus cannot be implicitly overridden by 5 U.S.C. § 5545(a), thanks to 38 U.S.C. § 7425(b). While the Secretary has the power to prescribe regulations concerning conditions of leave for RNs under section 7421(a), he appears to have exercised this merely by providing RNs the same right to court and military leave that other federal employees enjoy. Although other federal employees taking this leave are subject to the eight-hour rule of 5 U.S.C. § 5545(a)(2), this is because their nightwork premium pay statute is so limited. Registered nurses receive nighttime additional pay under section 7453(b), which contains no such limitation (and moreover calculates the amount of additional pay in a different manner, based on whether four or more hours fall within the designated night period).

### 5. Contrary provisions under 38 U.S.C. §§ 7421(a), 7425(b)

Because the Secretary has promulgated regulations for annual, sick, court and military leave for RNs, none of the Title 5 statutes directly applies.

### 6. Summary for RNs

Registered nurses are entitled, under the VA Handbook, to court and military leave in the same manner as other federal employees under Title 5. They are entitled, under VA regulations, to annual and sick leave. Registered nurses are entitled by statute to nighttime and weekend additional pay. When on court and military leave, RNs are entitled to nighttime additional pay for shifts customarily and regularly worked between the hours of 6 p.m. and 6 a.m., as defined in section 7453(b). Also when on court and military leave, RNs are entitled to weekend additional pay for shifts customarily and regularly worked between the hours of midnight Friday and midnight Saturday, unless part of the shift falls on Sunday, for leave taken after September 30, 1997, due to the 1997 Appropriations Act; they are entitled to full weekend additional pay for leave taken prior to October 1, 1997.

While on annual and sick leave, RNs are entitled to nighttime additional pay subject to the eight-hour rule under the VA's regulations. For annual and sick leave taken prior to October 1, 1997, RNs are entitled to weekend additional pay, while on annual and sick leave, for tours of duty customarily and regularly worked, any part of which falls between midnight Friday and midnight Sunday. For annual and sick leave taken after September 30, 1997, because of the 1997 Appropriations Act, RNs are entitled to weekend additional pay for tours of duty customarily and regularly worked, any part of which falls between midnight Friday and midnight Saturday, so long as no part of that tour of duty falls on Sunday.

### D. PAs and EFDAs

The only difference between the paid leave treatment of PAs and EFDAs, on the one hand, and RNs, on the other, is that PAs and EFDAs are not excepted from the definition of employee for purposes of the annual and sick leave statutes, 5 U.S.C. §§ 6303 and 6307. *See* 5 U.S.C. § 6301(2). This difference is of no consequence, though, as PAs and EFDAs are subject to the Secretary's section 7421 power to prescribe by regulation the conditions of leaves of absence. 38 U.S.C. § 7421(b)(6)-(7). This power having been exercised, as discussed above, concerning court, military, annual and sick leave, the regulations and not the provisions of Title 5 govern their entitlement to pay while on authorized leave. The regulations treat them the same as RNs, *see* Pls.' App. at 66–67, Def.'s App. at 6–8, and the Court concludes that their entitlement to additional pay while on authorized, paid leave is the same.

**19.** This appears not to be disputed, as the parties have stipulated that "[n]ight differential pay without limitation was and is included in the computation of 'pay' for paid court leave and military leave for registered nurses." Joint Stip. ¶ 12.

**608**

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS–IN–PART** and **DENIES–IN–PART** the plaintiffs' motion for partial summary judgment, and **GRANTS–IN–PART** and **DENIES–IN–PART** the defendant's cross-motion for summary judgment, as explained below:

Hybrids who have been designated to receive such additional pay for work performed are entitled to receive, as part of their pay for periods of annual, sick, military and court leave: (1) nighttime additional pay without an eight-hour limitation, (2) full weekend additional pay for leave taken prior to October 1, 1997, and (3) weekend additional pay, except for tours of duty any part of which would fall on Sunday, for leave taken after September 30, 1997. Since January 23, 2002, all hybrids have been entitled to receive, as part of their paid military, court, annual or sick leave, weekend additional pay, except for tours of duty any part of which would fall on Sunday.

 Registered nurses, PAs and EF-DAs are entitled to receive, as part of their paid annual and sick leave: (1) nighttime additional pay subject to the VA regulation's own eight-hour rule, (2) full weekend additional pay for leave taken prior to October 1, 1997, and (3) weekend additional pay, except for tours of duty any part of which would fall on Sunday, for leave taken after September 30, 1997. Registered nurses, PAs and EF-DAs are entitled to receive, as part of their paid court and military leave: (1) nighttime additional pay, not subject to any eight-hour rule, (2) full weekend additional pay for leave taken prior to October 1, 1997, and (3) weekend additional pay, except for tours of duty any part of which would fall on Sunday, for leave taken after September 30, 1997.

**IT IS SO ORDERED.**