Michael **REIDELL, Arnie Link, James Eyles, and Glenn Richard, Plaintiffs,**

v.

The **UNITED STATES, Defendant.**

No. 98–463 C.

United States Court of Federal Claims.

July 25, 2000.

Jon Buchholdt, Anchorage, Alaska, Counsel of Record for plaintiff.

Russell A. Shultis, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Mark A. Melnick, Assistant Director. Clarence D. Long, III, and Steele Kenyon, Arlington, Virginia, of counsel.

## OPINION

DAMICH, Judge.

In an opinion published on June 16, 1999, this Court denied, in part, the Defendant's motion to dismiss. *Reidell v. United States*, 43 Fed.Cl. 770 (1999). This Court concluded that the Court of Federal Claims has subject matter jurisdiction to hear the Plaintiff's complaint and that the complaint stated a cause of action. The parties jointly request that this Court vacate its decision because the parties have settled this matter on the condition that this Court grant the pending motion for vacatur. Although this Court recognizes the value of settlements and promotes efforts to settle, the Court denies the motion for vacatur for reasons of public policy and judicial independence.

## I. Facts

The complaint alleges a sequence of events, which may or may not repeat. The Plaintiffs were employed by a second-tier contractor, General Communications, Inc. The primary contractor was Paramax Systems Corp., later named UniSys Corp. The contract between the government and Paramax did not require Paramax (or its subcontractors) to pay Davis–Bacon wages.

While working for General Communications, Inc., Michael Reidell (the lead Plaintiff in this action) asked the Department of Labor to investigate whether the Davis–Bacon Act applied to the contract. Before the Department of Labor concluded its review, the contract was completed in December 1994.

Eventually, the Department of Labor determined that the Davis–Bacon Act applied to the contract. This decision was made after the work on the contract was completed. Although the Air Force filed an appeal within the Department of Labor, the Air Force did not prosecute the appeal. The Department of Labor's initial decision, consequently, became final.

The Plaintiffs filed this lawsuit to recover the money that would have been paid to them if they were paid Davis–Bacon wages throughout the contract. The Plaintiffs asserted several causes of action, which the Defendant challenged in a motion to dismiss.

This Court examined the Tucker Act, 28 U.S.C. § 1491, which grants the Court of Federal Claims its jurisdiction. The Tucker Act grants jurisdiction when "the Constitution, or any Act of Congress or any regulation of an executive department" mandates the payment of money. *See Eastport Steam-*

*ship Corp. v. United States,* 372 F.2d 1002, 1007, 178 Ct.Cl. 599, 605 (Ct.Cl.1967).

This Court held that 29 C.F.R. § 1.6(f), a regulation implementing the Department of Labor's authority to determine whether government contracts must pay Davis–Bacon wages, "implies that the United States should pay money." *Reidell,* 43 Fed.Cl. at 773. Accordingly, this Court held that the Court of Federal Claims has subject matter jurisdiction. The decision, however, did not rule on the merits of the complaint, that is, decide whether the United States owes the Plaintiffs money.

After the decision on the motion to dismiss, the parties continued to litigate the case. The parties apparently have conducted some discovery, directed primarily to establishing the amount of damages for the Plaintiffs. The parties also discussed settling the case.

These discussions eventually proved fruitful and the parties agreed to a settlement. The settlement is conditioned on this Court's granting a motion for vacatur. From the information provided to the Court, the Court understands that if the Court denies the motion for vacatur, then the settlement (at least in its existing form) will not proceed.

## II. Legal Standard for Vacating Decisions

Rule 60(b) of the Court of Federal Claims generally permits a court to vacate its orders. "On motion and upon such terms as are just, the court may relieve a party ... from final judgment, order, or proceeding for the following reasons: ... (5) ... it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." R.C.F.C. 60(b).

In deciding whether to use its discretion to vacate its own order, this Court is guided by practices of other courts, especially appellate courts. The Supreme Court addressed the issuance of vacatur in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Because this case is a recent pro-

nouncement from the Supreme Court, it deserves careful attention.

In *Bonner Mall,* the Ninth Circuit ruled in favor of one party (the debtor in a bankruptcy proceeding). The Supreme Court granted certiorari. The parties settled the case and mooted the controversy of the case. The creditor requested that the Supreme Court vacate the decision of the Ninth Circuit, which was unfavorable to the position of creditors. The Supreme Court denied the request for vacatur. In addressing whether there was a case or controversy, the Supreme Court stated:

> A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment .... The same is true when mootness results from unilateral action of the party who prevailed below .... Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary process of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice.

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. at 25, 115 S.Ct. at 391–92, 130 L.Ed.2d at 242 (1994) (citations omitted, footnote omitted).

As a matter of policy, the Supreme Court was concerned about the public interest.

> Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.

*Id.,* 513 U.S. at 26, 115 S.Ct. at 393, 130 L.Ed.2d at 243.

In emphasizing the public interest in the value of precedent, the Supreme Court endorsed an earlier position taken by the D.C. Circuit. The D.C. Circuit also stresses the public's ownership of the decision.

> When a clash between genuine adversaries produces a precedent, ... the judicial sys-

tem ought not to allow the social value of that precedent, created at cost to the public and other litigants, to be a bargaining chip in the process of settlement. The precedent, a public act of a public official, is not the parties' property.

*In re United States*, 927 F.2d 626, 628 (D.C.Cir.1991)(quoting *In re Memorial Hospital of Iowa County, Inc.*, 862 F.2d 1299, 1302 (7th Cir.1988)).

The Federal Circuit's position regarding vacatur appears uncertain. In *Federal Data Corp. v. SMS Data Prods. Group, Inc.*, 819 F.2d 277 (Fed.Cir.1987), the Federal Circuit vacated a trial court decision after the parties settled during appeal. This decision began a pattern of vacating the trial court on patent validity when the trial court also found non-infringement. *See* William P. Atkins, *The History and Subsequent Demise of Vacatur Upon Settlement by the Federal Circuit*, 78 J. Pat. & Trademark Off. Soc'y 295, 300 (1996) (collecting cases).

The Supreme Court stated that the Federal Circuit was abusing its discretion in this practice. *Cardinal Chemical Co. v. Morton Internat'l Inc.*, 508 U.S. 83, 100–02, 113 S.Ct. 1967, 1977–78, 124 L.Ed.2d 1, 17–18 (1993). In vacating the Federal Circuit's decision to vacate the trial court decision that the patents were invalid, the Supreme Court commented that vacating a decision about a patent's validity created uncertainty for potential competitors in the patent field.

In the year after *Cardinal Chemical*, the Supreme Court decided *U.S. Bancorp.* As discussed above, *U.S. Bancorp* recognized the public value of lower court decisions as precedent even when the parties to the litigation have settled the case. After *U.S. Bancorp*, the Federal Circuit, to this Court's knowledge, has not addressed vacatur following settlement in a published decision. Accordingly, it is difficult to ascertain the Federal Circuit's current policy on vacatur.

## III. Analysis

The Court declines to vacate its decision, believing that its decision serves the public

interest. The public benefits from having the decisions of its public officials remain unadulterated. This advantage to the public and judicial system in general outweighs the value of having the present case settled.

The decision on the motion to dismiss *may* be an influential decision. It was the first decision, according to the research by the parties and by the Court, to address what happens when the Department of Labor concludes, after a contract has been performed, that the contract should include Davis–Bacon wages. Because it is novel, this decision may have some value.

But, a decision by the Court of Federal Claims stands as persuasive authority. A decision here is not binding on other judges in this same court. *Sun Eagle Corp. v. United States*, 23 Cl.Ct. 465, 472 (1991); *Technology for Communications, Int'l v. United States*, 22 Cl.Ct. 711, 713 (1991).

Nevertheless, although trial court decisions are not binding, appellate courts have refused to vacate these decisions on public policy grounds. *See, e.g., Humphreys v. Drug Enforcement Admin.*, 105 F.3d 112 (3d Cir.1996); *In re United States*, 927 F.2d 626, 628 (D.C.Cir.1991); *In re Memorial Hospital of Iowa County, Inc.*, 862 F.2d 1299 (7th Cir.1988).

As discussed above, the public policy is the public's ownership of the work of its public officials, including its judges. The only reason for this Court to vacate its decision is to permit the parties to settle on the terms of the existing settlement agreement. The Court has not been presented with any authority (old or new) to persuade it that its decision on the motion to dismiss was legally incorrect.[1]

Vacating a decision to permit a settlement, although tantalizing, may in the long run prove dangerous to the Court of Federal Claims. The Court of Federal Claims exists to decide cases brought against the United States Government only. The United States

1. The Department of Justice continues to believe that the Court's decision denying its motion to

dismiss was incorrect.

Government is always the Defendant and is represented by the Department of Justice.

If the Court of Federal Claims freely vacated its decisions to permit settlements, the United States would be in a position to influence the jurisprudence of this Court too easily. As an institutionalized party, the United States can consider "long term" implications of judicial decisions in a way that almost all Plaintiffs, who do not usually reappear in this Court, do not. Few Plaintiffs, if any, would be willing to put aside their personal interest (represented by the settlement) to preserve the legal system (represented by the judicial decision). There is every reason for Plaintiffs to agree to join in a request for vacatur, if a settlement is conditioned on that request, because the Plaintiffs have almost no reason to care about the decision as precedent. Thus, if permitted by the Court of Federal Claims, the United States might be tempted to use the technique of settlement conditioned on vacatur to eradicate unfavorable decisions.[2] The course of jurisprudence in the court could be stifled as only those decisions favorable to the United States remain undisturbed.

Another decision by the Court of Federal Claims on vacatur is *MAPCO Alaska Petroleum, Inc. v. United States*, 30 Fed.Cl. 153 (1993). In *MAPCO*, the court refused to vacate its decision granting the Plaintiff's motion for summary judgment. The primary reason was that the parties' settlement did not depend on the granting of the vacatur. *Id.*, 154. The Defendant, sensibly, attempts to distinguish *MAPCO* on this ground because the settlement of the present case is explicitly dependent on the granting of the vacatur. But *MAPCO* itself recognizes the potentially deleterious effects of conditioning

settlement on a vacatur. "The court's acquiescence in vacatur of the opinion was not made a necessary element of settlement, as it should not be. It would be inappropriate to put the court in the position of being a contributing party to a settlement." *Id.*, 154.

This Court recognizes that its refusal to vacate the decision has the consequence of preventing the settlement as it exists. Without a settlement, the parties must litigate this case. (Of course, the parties could negotiate a settlement agreement that is not conditioned on the Court's vacatur.) Whether continued litigation is better or worse for the parties to the litigation than the settlement depends on the ultimate outcome of the litigation.[3]

This Court is aware that in denying the motion for vacatur, it has prevented the settlement even though the judicial system encourages settlements.[4] Settlements, however, should not weaken the judicial process. Conditioning the settlement of a matter on vacating an opinion seems to be one step, albeit a small step, towards a judiciary whose independence is compromised.

The public and "the legal community as a whole," *U.S. Bancorp*, 513 U.S. at 27, 115 S.Ct. at 393, 130 L.Ed.2d at 243, may value this decision as they see fit. It is a decision by a public official. If other courts are persuaded by its reasoning, they will follow it.

The Department of Justice argues that vacating the decision is necessary to avoid a problem in that "future litigants [ ] might assume that the United States failed to appeal a decision with which it disagreed." The obvious solution to this dilemma is for the United States to appeal the decision.[5] A decision from the Federal Circuit would probably clarify the issues regardless of whether the Federal Circuit affirmed or reversed this Court. By removing an ambigui-

---

**2.** The different incentives for repeat litigants and one-time litigants are discussed in Daniel Purcell, *The Public Right to Precedent: A Theory and Rejection of Vacatur*, 85 Cal. L.Rev. 867, 885–90 (1997) and Howard Slavitt, *Selling the Integrity of the System of Precedent: Selective Publication, Depublication, and Vacatur*, 30 Harv. C.R.-C.L. L.Rev. 109, 131 (1995).

**3.** In a status conference held after the denial of the motion to dismiss, the parties agreed that the case raised primarily legal issues. The parties expected that the case could be resolved on summary judgment. Thus, the cost of litigation

should be relatively small because extensive discovery is not expected.

**4.** Whether vacating judgments as a matter of routine would increase judicial efficiency overall is disputed. *See* Slavitt, *supra*, at 136.

**5.** In the context of considering a declaratory judgment action to overturn an interlocutory order in another case, the Federal Circuit has emphasized the role of the appellate system. "When a court enters an order that a party does not like, the party's recourse is to seek relief on

ty, the state of the law would actually be improved.[6]

## IV. Conclusion

The motion for vacatur is DENIED. All parties are directed to file a status report that proposes how to proceed with this case within 15 days of the date of this decision.

### ADDENDA

After this opinion was issued, the Court received a status report as requested. In this status report, the Defendant asserted that the settlement was *not* conditioned on the Court's vacating its earlier decision. Rather, a condition of the settlement was that the Plaintiff join in the request for vacatur.

The Court has reviewed the record before it. This record is ambiguous as to whether the granting of the motion for vacatur was required for settlement. The record is not clear; many interpretations are possible. One reasonable interpretation of the record is that the Court's acquiescence in the vacatur was required. Since the Court's interpretation was reasonable, the July 25, 2000 decision stands. The Court, however, presents the Defendant's position for completeness.

---

appeal." *Glitsch, Inc. v. Koch Engineering Co., Inc.*, 216 F.3d 1382 (Fed.Cir.2000).

**6.** *See* Slavitt, *supra*, at 140 (describing the role of precedent in clarifying the law).