**Lisa ADAMS, et al., on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 10–60C.**

United States Court of Federal Claims.

June 30, 2011.

Ira M. Lechner, Law Office of Ira M. Lechner, Escondido, California, for Plaintiffs.

Hillary A. Stern, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant, Patricia Smith, Department of Veterans Affairs, Office of General Counsel, Washington, D.C.

## MEMORANDUM OPINION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT ON LIABILITY

BRADEN, Judge.

## I. STATUTORY AND FACTUAL BACKGROUND.[1]

Effective January 1, 2004, Congress authorized civil service employees in the Veterans Health Administration ("VHA") within the Department of Veterans Affairs ("VA") to be compensated at their basic pay rate, plus an additional twenty-five percent above their basic pay rate for work performed between "midnight Friday and midnight Sunday"[2] (referred to herein as "premium pay"). *See* Veterans Health Care, Capital Asset, and Business Improvement Act of 2003, Pub.L. No. 108–170, § 303, 117 Stat. 2042, 2058 (codified as amended at 38 U.S.C. § 7454(b)(3) (2006)). When the employees elected to use authorized accrued "leave with pay"[3] on Saturdays, they were only compensated at their

---

1. The relevant facts were derived from Plaintiffs' Exhibits to the September 29, 2010 Motion For Partial Summary Judgment As To Liability ("Pl. Ex. 1–4").

2. The period between "midnight Friday and midnight Sunday" refers to the time between 12:00 a.m. Saturday and 12:00 a.m. Monday.

basic pay rate. Pl.Ex. 1 at ¶¶ 1, 4; Pl.Ex. 4 at ¶ 2.

## II. PROCEDURAL HISTORY.

On January 29, 2010, a Class Action Complaint ("Compl.") was filed in the United States Court of Federal Claims alleging that, since January 1, 2004, Plaintiffs, and those similarly situated, have been deprived of "regular and customary Saturday premium pay while on authorized and accrued leave [with pay]." Compl. ¶¶ 33–34 (internal quotation marks omitted). In addition, Plaintiffs filed a Motion For Class Certification.

On March 17, 2010, the Government filed an Opposition to Plaintiffs' January 29, 2010 Motion For Class Certification. On March 24, 2010, the Government filed an Answer. On March 29, 2010, Plaintiffs filed a Reply to the Government's March 17, 2010 Opposition. On April 13, 2010, the Government filed an Amended Answer.

On June 2, 2010, the parties filed a Joint Preliminary Status Report ("6/2/10 JPSR"), wherein the court was advised: the trial should be bifurcated into separate liability and damages proceedings; cross-motions for summary judgment would be filed after the court ruled on Plaintiffs' January 29, 2010 Motion For Class Certification; settlement was highly unlikely; and discovery may not be necessary if the parties were able to negotiate stipulations of fact. 6/2/10 JPSR at 1–3.

On June 11, 2010, Plaintiffs filed a Motion For Approval Of Class Certification Notices. On June 18, 2010, the court issued a Memorandum Opinion And Order granting class certification. *See Adams v. United States,* 93 Fed.Cl. 563, 578 (2010) (defining the relevant class as current or former VHA employees in specific occupations who customarily work on Saturdays but receive only basic pay when they elect to use authorized accrued

---

3. Congress has authorized federal service employees to receive "leave with pay" pursuant to the terms and conditions of chapter 63 of title 5 of the United States Code. See 5 U.S.C. §§ 6303 (2006) (annual accrued leave), 6307 (2006) (sick leave), 6322 (2006) (leave for jury or witness service ("court leave")), 6323 (2006) (military leave).

"leave with pay" (hereinafter "Class Plaintiffs")); *see also* Court Appendix.

On July 21, 2010, the Government filed a Response to Class Plaintiffs' June 11, 2010 Motion For Approval Of Class Certification Notices. On July 22, 2010, Plaintiffs filed Proposed Class Action Notices. On July 29, 2010, Class Plaintiffs filed a Reply to the Government's July 21, 2010 Response. On August 11, 2010, the court issued an Order approving Class Plaintiffs' July 22, 2010 Proposed Class Action Notices. On August 23, 2010, the court entered a proposed Joint Stipulated Protective Order.

On September 29, 2010, Class Plaintiffs filed a Motion For Partial Summary Judgment As To Liability ("Class Pl. Mot."), together with four exhibits ("Pl.Ex. 1–4"). On November 22, 2010, the Government filed a Cross–Motion For Summary Judgment ("Gov't Cross–Mot."), together with an Appendix of Exhibits ("Gov't Appx. at 1–8"). On December 20, 2010, Class Plaintiffs filed a Reply ("Pl. Reply").

On April 18, 2011, the court requested supplemental briefing to identify the statutory authority entitling Class Plaintiffs to receive "premium pay" for services performed on weekends. On May 2, 2011, Class Plaintiffs filed a Supplemental Brief ("Class Pl. Supp. Br."), together with two Supplemental Exhibits ("Pl. Supp. Ex. 1–2"), and the Government filed a Supplemental Brief ("Gov't Supp. Br.").

## III. DISCUSSION.

### A. Jurisdiction.

■ The Tucker Act provides that the United States Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act, however, does not, by itself, confer jurisdiction on the court. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ("The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." (citation omitted)). Therefore, a plaintiff must identify an independent basis by way of a contract, federal statute, regulation, or Constitutional provision upon which plaintiff is entitled to monetary payment from the federal government. *See United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("The claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." (internal quotation marks and citations omitted)); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) ("[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be money-mandating." (citations omitted) (internal quotation marks omitted)).

In determining whether the United States Court of Federal Claims has jurisdiction over a claim, the trial court has been instructed that "at the outset [the court] shall determine ... whether the Constitutional provision, statute, or regulation is one that is money-mandating. If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course." *Fisher,* 402 F.3d at 1173.

In this case, the January 29, 2010 Complaint alleges that the now designated Class Plaintiffs were unlawfully denied "premium pay" when they elected to use authorized accrued "leave with pay" on Saturdays, in violation of 5 U.S.C. §§ 6303, 6307, 6322, 6323 and 38 U.S.C. § 7454(b)(3). Compl. ¶¶ 6–7, 14, 15, 30–35. As such, the January 29, 2010 Complaint identifies and pleads an

independent right to money damages sufficient to invoke the court's jurisdiction under the Tucker Act.

### B. Standing.

■ The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing must be determined "as of the commencement of suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n. 5, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.* at 560–61, 112 S.Ct. 2130. Specifically, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citations omitted).

■ In this case, the January 29, 2010 Complaint alleges that Plaintiffs, and those similarly situated, have incurred injury that is concrete, particular, actual, traceable to the VA's actions, and that the resulting economic injury can be determined in a specific amount. Compl. ¶¶ 30–35. As such, the January 29, 2010 Complaint alleges the jurisdictional prerequisites to establish that Plaintiffs have standing to pursue a claim that the VA denied them "premium pay" when they elected to use authorized accrued "leave with pay" on Saturdays.

### C. Standard On A Motion For Summary Judgment.

On a motion for summary judgment, the moving party must show there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See Moden v. United States*, 404 F.3d 1335, 1342 (Fed.Cir.2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes of material fact that might affect the outcome of the suit will preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." (citation omitted)). The "existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). To avoid summary judgment, the nonmoving party must put forth evidence sufficient for a reasonable finder of fact to return a verdict for that party. *Id.* at 248–50, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding the moving party may meet its burden "by 'showing'—that is, pointing out to the [trial court]—that there is an absence of evidence to support the nonmoving party's case"); *see also Riley & Ephriam Constr. Co., Inc. v. United States*, 408 F.3d 1369, 1371 (Fed.Cir.2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show the existence of a genuine issue for trial. *See Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir.2001) (explaining that, once a movant demonstrates the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial" (citation omitted)).

The trial court must resolve any doubt over factual issues in favor of the nonmoving

party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." (citation omitted) (internal quotation marks omitted)). Further, all reasonable inferences and presumptions must be resolved in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *see also Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1283 (Fed.Cir.2008) ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

**D. Relevant Statutory Authority Governing Veterans Health Administration Employees.**

Chapter 74 of title 38 authorizes the VA Secretary to hire three categories of employees for the VHA. The first category includes "physicians, dentists, podiatrists, chiropractors, optometrists, registered nurses, physician assistants, and expanded-function dental auxiliaries." 38 U.S.C. § 7401(1) (2006). The terms and conditions of employment, rights, and associated benefits of these employees are "governed in significant part by chapter 74 of title 38" instead of title 5, which governs general federal civil service employees. *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed.Cir.2002). The VA is responsible for promulgating regulations governing "the hours and conditions of employment and leaves of absence" of such employees. 38 U.S.C. § 7421(a) (2006).

The second category of VHA employees are "hybrids," hired under 38 U.S.C. § 7401(3) (2006). The terms and conditions of employment, rights, and associated benefits of these employees are governed in part by title 38 and, in part, by title 5.[4] *See Curry v. United States*, 66 Fed.Cl. 593, 595 n. 4 (2005) (" 'Hybrids' are so-called because they are governed in some respects by [t]itle 38 and in other respects by [t]itle 5." (citation omitted) (internal quotation marks omitted)). The United States Court of Federal Claims has determined that "hybrids," and registered nurses, physician assistants, and expanded-function dental auxiliaries appointed under 38 U.S.C. § 7401(1) are entitled to receive "premium pay" when they elect to use authorized accrued "leave with pay" on Saturdays. *Id.* at 608.

The third category of VHA employees are General Schedule civil service employees, hired under 38 U.S.C. § 7408 (2006). The terms and conditions of their employment, rights, and associated benefits are governed by title 5. *See* 38 U.S.C. § 7408(a) ("There shall be appointed ... under civil service laws, rules, and regulations, such additional employees ... as may be necessary to carry out the provisions of this chapter."); *see also* 38 U.S.C. § 7408 note ("The civil service laws, referred to in [38 U.S.C. § 7408(a) ] are set forth in title 5[.]"). This category of employees has been certified as Class Plaintiffs in this case.[5] *See Adams*, 93 Fed.Cl. at 578.

---

**4.** Title 38 defines employees in the following occupations as "hybrid employees":

> Audiologists, speech pathologists, and audiologist-speech pathologists, biomedical engineers, certified or registered respiratory therapists, dietitians, licensed physical therapists, licensed practical or vocational nurses, nurse assistants, medical instrument technicians, medical records administrators or specialists, medical records technicians, medical technologists, dental hygienists, dental assistants, nuclear medicine technologists, occupational therapists, occupational therapy assistants, kinesiotherapists, orthotist-prosthetists, pharmacists, pharmacy technicians, physical therapy assistants, prosthetic representatives, psychologists, diagnostic radiologic technologists, therapeutic radiologic technologists, social workers, marriage and family therapists, licensed professional mental

> health counselors, blind rehabilitation specialists, blind rehabilitation outpatient specialists[.]

38 U.S.C. § 7401(3) (2006), *amended by* Caregivers and Veterans Omnibus Health Services Act of 2010 ("Caregivers Act of 2010"), Pub.L. No. 111–163, § 601(a)(2), 124 Stat. 1130, 1168.

**5.** The Class Plaintiffs include the occupation of nurse assistants. At the time the January 29, 2010 Complaint was filed, nurse assistants were hired pursuant to section 7408, and were within the scope of the proposed class. Subsequently, Congress re-categorized nurse assistants as "hybrid" employees, subject to section 7401(3) of title 38. *See* Caregivers Act of 2010, Pub.L. No. 111–163, § 601(a)(2), 124 Stat. 1130, 1168. Therefore, nurse assistants are Class Plaintiffs eligible to receive "premium pay" pursuant to 38 U.S.C.

To better understand the parties' arguments, a brief discussion of the governing statutes is required. Section 7453(c) of title 38 entitles VHA nurses to "premium pay" in addition to their basic pay when they perform work on weekends:

A nurse performing service on a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay for each hour of service on such tour at a rate equal to 25 percent of such nurse's hourly rate of basic pay.

38 U.S.C. § 7453(c) (2006).

As of January 1, 2004, Class Plaintiffs have been entitled to receive the same pay that nurses receive under section 7453(c). *See* 38 U.S.C. § 7454(b)(3) (2006) ("Employees appointed under [38 U.S.C. § 7408] shall be entitled to additional pay on the same basis as provided for nurses in [38 U.S.C. § 7453(c) ].").   In other words, the Class Plaintiffs who work "a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday" are entitled to "premium pay" in addition to their basic pay for each hour of service "on such tour." 38 U.S.C. §§ 7453(c), 7454(b)(3).

As of May 5, 2010, however, Congress amended section 7454(b)(3) to eliminate the reference to pay that nurses receive under section 7453(c). *See* Caregivers Act of 2010, Pub.L. No. 111–163, § 601(k)(2), 124 Stat. 1130, 1171–72 (to be codified at 38 U.S.C. § 7454(b)(3)). Section 7454(b)(3) now provides:

Employees appointed under section 7408 of this title performing service on a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay in addition to the rate of basic pay provided such employees for each hour of service on such tour at a rate equal to 25 percent of such employee's hourly rate of basic pay.

§ 7454(b)(3) only for the period between January 1, 2004 and May 5, 2010, the date that the

*See* Caregivers Act of 2010, Pub.L. No. 111–163, § 601(k)(2), 124 Stat. 1130, 1171–72 (to be codified at 38 U.S.C. § 7454(b)(3)).

Pursuant to chapter 63 of title 5, Class Plaintiffs also are entitled to receive annual accrued leave (5 U.S.C. § 6303), sick leave (5 U.S.C. § 6307), court leave (5 U.S.C. § 6322), and, where applicable, military leave (5 U.S.C. § 6323).

**E. The Parties' Cross–Motions For Summary Judgment On Liability.**

**1. Whether The Department Of Veterans Affairs Directive 5007 And Handbook 5011 Are Entitled To Deference.**

█ The Government asserts that VA Directive 5007 and Handbook 5011 reflect the agency's policy determination that 38 U.S.C. § 7453 (2006) prohibits VHA employees from receiving "premium pay" for hours not worked and that this determination should be afforded deference. Gov't Cross–Mot. at 16, 23–25, 28. The United States Court of Appeals for the Federal Circuit, however, has held that VA directives and handbooks are not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See James v. Von Zemenszky,* 284 F.3d 1310, 1319 (Fed.Cir.2002) ("Because Directive 5111 and Handbook 5111 are akin to interpretations contained in policy statements, agency manuals, and enforcement guidelines, they are not entitled to *Chevron* deference. Instead they are accorded a lesser degree of deference proportional to [their] power to persuade." (citations omitted) (internal quotation marks omitted)).

Aside from the fact that *Chevron* is not applicable to internal agency guidelines, the Government's position is further undermined by the fact that nothing in VA Directive 5007 or VA Handbook 5011 demonstrates that the VA has determined that 38 U.S.C. § 7453 prohibits the payment of "premium pay" for hours not worked. In fact, VA Directive 5007 provides that nurses are entitled to receive "premium pay" for hours worked between 6 p.m. and 6 a.m., even when they elect to use

Caregivers Act became effective.

authorized accrued annual or sick leave, so long as the total amount of such leave in a pay period is less than eight hours. *See* VA Directive 5007, pt. V, ch. 6, § (1)(a)(1) (2002). As the United States Court of Federal Claims has observed, this "cannot be squared with the [Government's] litigation position that section 7453 prohibits the payment of [premium] pay unless earned by the performance of work." *Curry*, 66 Fed.Cl. at 606.

As opposed to anything contained in title 38, the VA's policy prohibiting "premium pay" for hours not worked on Saturdays rests on the agency's interpretation of the 1998 Appropriations Act. *See* Treasury, Postal Service, and General Government Appropriations, 1998 ("1998 Appropriations Act"), Pub.L. No. 105–61, § 636, 111 Stat. 1272, 1316 (1997). As the United States Court of Federal Claims previously recognized:

> A little more than one month after Congress enacted the [1998 Appropriations Act], the VA issued an internal bulletin stating: Language in Public Law 105–61 ... prohibits the payment of *Sunday (and Saturday)* pay for periods of military leave, court leave, continuation of pay and all other absences in which the employee is not performing work.

*Curry*, 66 Fed.Cl. at 600–01 (emphasis added).

The Government's interpretation is untenable because the 1998 Appropriations Act only prohibits the payment of *"Sunday premium pay* to any employee unless such employee actually performed work during the time corresponding to such premium pay." Pub.L. No. 105–61, § 636, 111 Stat. 1272, 1316 (1997) (emphasis added).

For these reasons, the court declines to afford the Government's litigation-driven interpretation of 38 U.S.C. § 7453 deference.

**2. Whether Class Plaintiffs Who Elect To Use Authorized Accrued "Leave With Pay" On Saturdays Are Entitled To Receive "Premium Pay" In Addition To Their Basic Pay.**

■ The Government posits three reasons why title 38 prohibits Class Plaintiffs who elect to use authorized accrued "leave with pay" on Saturdays from receiving "premium pay" in addition to basic pay. First, the Government argues that 38 U.S.C. § 7453(c) (2006) prohibits the VA from compensating Class Plaintiffs "premium pay" for hours not worked. Gov't Cross–Mot. at 16, 24. Section 7453(c), however, does not expressly limit the amount of pay that an employee is entitled to receive when the employee elects to use authorized accrued "leave with pay." Instead, section 7453(c) governs the amount of pay to which an employee is entitled when *"performing service* on a tour of duty." 38 U.S.C. § 7453(c) (2006) (emphasis added); *see also Curry*, 66 Fed.Cl. at 599 ("Section 7453 may define additional pay as an entitlement when a nurse is 'performing service on a tour of duty,' but this provision by its own terms has *nothing* to do with leave.... [I]t does not define how much pay an employee receives while on leave.... Silence on [the amount of pay an employee receives while on leave] means that the amount of premium pay that can be received while on leave is determined by the 'leave with pay' statutes themselves.").

Second, the Government contends that, because 38 U.S.C. § 7454(b)(3) (2006) entitles Class Plaintiffs to be paid "on the same basis as provided for nurses in section 7453(c)," they must be paid the same amount as nurses when they elect to use authorized accrued "leave with pay." Gov't Cross–Mot. at 15–16, 26. To the contrary, Congress exempted nurses from two types of "leave with pay": annual accrued leave and sick leave, but did not exempt Class Plaintiffs from those provisions. *See* 5 U.S.C. §§ 6301, 6303, 6307. The fact that Congress provided Class Plaintiffs with the same "premium pay" on weekends as nurses does not "silently exempt them from sections 6303 and 6307 (the leave provisions which do not apply to [nurses]), or tie their leave pay to that of [nurses]." *Curry*, 66 Fed.Cl. at 599. In fact, the Government concedes that sections 6303 and 6307 apply to Class Plaintiffs. Pl.Ex. 1 ¶ 4. In addition, the Government's reasoning suffers from the same flaw as the Government's prior argument, because section 7454(b)(3) only concerns the amount owed for work that Class Plaintiffs performed. *See Curry*, 66 Fed.Cl. at 599 ("The purpose of the quoted

statutory language is not to determine the hybrids' leave pay, but their pay while working."). Since section 7454(b)(3) merely authorizes Class Plaintiffs to receive "premium pay" when they work during the weekend, it has no bearing on the amount an employee is entitled to be paid when the employee elects to use authorized accrued "leave with pay."

Third, the Government argues that 38 U.S.C. § 7453(i) (2006) prohibits VHA employees from receiving "premium pay" in addition to basic pay when they elect to use authorized accrued leave. Gov't Cross–Mot. at 16–18. Section 7453(i) states:

Any additional pay paid pursuant to this section shall not be considered as basic pay for the purposes of the following provisions of title 5 (and any other provision of law relating to benefits based on basic pay):

(1) Subchapter VI of chapter 55.

(2) Section 5595.

(3) Chapters 81, 83, 84, and 87.

38 U.S.C. § 7453(i).

The "leave with pay" provisions of title 5, however, are not governed by section 7453(i). *See* 5 U.S.C. § 5595 (2006) (governing severance pay); 5 U.S.C. §§ 8101–8193 (2006) (governing work injury pay); 5 U.S.C. §§ 8301–8351, 8401–8479 (2006) (governing retirement pay); 5 U.S.C. §§ 8701–8716 (2006) (governing life insurance).

Section 7453(i) prohibits the payment of "premium pay" under subchapter VI of chapter 55. That subchapter authorizes a lump-sum payment for accumulated and accrued leave for individuals who are separated from service, transferred to another position, or elect to receive a lump-sum payment upon entering active duty in the armed forces. *See* 5 U.S.C. §§ 5551–53 (2006). The Government insists that, because lump-sum payments are equivalent to the pay an employee is entitled to receive if that employee elects to use authorized accrued annual leave, "the only logical conclusion that can be drawn ... is that ["premium pay"] must also be excluded from annual leave pay." Gov't Cross–Mot. at 17.

Two precedential decisions of the United States Court of Appeals for the Federal Circuit direct the court's analysis at this juncture. In *Lanehart v. Horner,* 818 F.2d 1574 (Fed.Cir.1987), the United States Court of Appeals for the Federal Circuit held that title 5 prohibits any reduction in the customary and regular pay of federal employees. *Id.* at 1581 ("[W]e conclude that 'pay' as used in the 'leave with pay' statutes has consistently been construed for more than a century as encompassing the total compensation or remuneration normally and regularly received by an employee."). Likewise, in *Armitage v. United States,* 991 F.2d 746 (Fed. Cir.1993), the United States Court of Appeals for the Federal Circuit held that "correct application of the 'leave with pay' statutes prevents any reduction in customary and regular pay." *Id.* at 750. Therefore, our appellate court held that federal police officers are entitled to "premium pay" when they elect to use authorized accrued "leave with pay" on Sundays. *Id.* at 751. In *dicta,* however, the court recognized "the possibility that explicit congressional language precluding premium compensation for hours of authorized leave, though not part of the 'leave with pay' statutes, could work to prevent the appellees from prevailing in this case." *Id.* Therefore, *Armitage* and *Lanehart* together stand for the proposition that federal employees who elect to use authorized accrued "leave with pay" under chapter 63 of title 5 are entitled to their "customary and regular pay," unless explicit congressional language states otherwise.

Therefore, contrary to the Government's arguments, the United States Court of Appeals for the Federal Circuit has held that "when Congress has intended to exclude certain types of remuneration from a pay statute it has done so with clarity." *Lanehart,* 818 F.2d at 1582. The fact that Congress authorized lump-sum payments to be calculated at basic pay rates for unused "leave with pay" is irrelevant to whether the Class Plaintiffs are entitled to "premium pay" when they elect to use authorized accrued "leave with pay."

In a similar vein, the Government urges the court to construe the phrase "and any other provision of law relating to benefits based on basic pay" in section 7453(i) to prohibit the VA from authorizing Class Plain-

tiffs to receive "premium pay" when they elect to use authorized accrued "leave with pay." Gov't Cross–Mot. at 18. Section 7453(i), however, only prohibits the payment of "premium pay" when a statute refers to "*basic pay.*" 38 U.S.C. § 7453(i) (emphasis added). In contrast, "leave with pay" under title 5 refers only to "pay." 5 U.S.C §§ 6303, 6307, 6322, 6323. The distinction between "basic pay" and "pay" was significant to *Lanehart*'s holding that the "leave with pay" statutes entitle employees to receive their full and customary measure of pay when they elect to use authorized accrued "leave with pay." *See Lanehart,* 818 F.2d at 1581 ("Buttressing [the conclusion that 'pay with leave' encompasses total remuneration normally and regularly received] is the fact that Congress has used more limited terms, rather than the generic term 'pay,' when it intended to refer to specific types of pay.").

The Government further insists that the word "basic" is not critical to determine whether section 7453(i) applies to a provision in title 5. Gov't Cross–Mot. at 18. The Government reasons that section 7453(i) expressly applies to subchapter VI of chapter 55, even though that subchapter refers only to "pay," not "basic pay." *Id.* Therefore, section 7453(i) should be read to apply to "pay with leave" under title 5, although the "pay with leave" statutes (5 U.S.C §§ 6303, 6307, 6322, 6323) authorize employees to be compensated "pay," not "basic pay." *Id.*

As the United States Court of Federal Claims observed, by including subchapter VI of chapter 55 in section 7453(i), Congress was "over-inclusive in listing benefits it thought were based on 'basic pay.'" *Curry,* 66 Fed. Cl. at 600. This, however, does not require a court to construe section 7453(i) to exclude "premium pay" from all benefits based on "pay." *Id.* Instead, the *Curry* court determined that "the most logical conclusion is that Congress meant what it did and did what it meant—excluding the additional pay only from the lump-sum separation pay calculation, the other benefits enumerated, and any provisions basing benefits on basic pay." *Id.; see also Athey v. United States,* 78 Fed.Cl. 157, 163 (2007) (adopting *Curry*'s analysis of section 7453(i)).

Finally, the Government argues that the 1998 Appropriations Act, Pub.L. No. 105–61, § 636, 111 Stat. 1272, 1316 (1997), is a "signal" of congressional disapproval of any interpretation of the "leave with pay" statutes that requires "premium pay" for hours not actually worked. Gov't Cross–Mot. at 31. The 1998 Appropriations Act, however, prohibits "any appropriation contained in this Act or any other Act for any fiscal year" from being available to pay "*Sunday premium pay* to any employee unless such employee actually performed work during the time corresponding to such premium pay." 1998 Appropriations Act, Pub.L. No. 105–61, § 636, 111 Stat. 1272, 1316 (1997) (emphasis added). Despite Congress's explicit reference to "*Sunday premium pay,*" the VA nevertheless proceeded to issue regulations prohibiting employees from receiving "premium pay" when they elect to use authorized accrued "leave with pay" on Saturdays. *See Curry,* 66 Fed.Cl. at 600–01 ("A little more than one month after Congress enacted the [1998 Appropriations Act], the VA issued an internal bulletin stating: Language in Public Law 105–61 ... prohibits the payment of Sunday (and Saturday) pay for periods of military leave, court leave, continuation of pay and all other absences in which the employee is not performing work." (citations omitted)). The meaning of "Sunday," however, is plain and cannot be read to prohibit pay for tours of duty occurring on Saturdays. *See Curry,* 66 Fed.Cl. at 601 ("When Congress said 'Sunday,' the Court presumes that Congress meant 'Sunday' and not 'Saturday and Sunday.'").

In sum, the court has determined that sections 7454(b)(3) and 7453(c) of title 38 authorize Class Plaintiffs to receive "premium pay" while working, and do not prohibit VHA employees who elect to use authorized accrued "leave with pay" on Saturdays from being compensated "premium pay" for that time. The court also has determined that section 7453(i) does not prohibit the payment of "premium pay" when employees elect to use authorized accrued "leave with pay." The parenthetical in section 7453(i) only prohibits "premium pay" from being considered as "basic pay" under title 5. Section 7453(i) is

not a limitation on the "leave with pay" statutes, since those statutes authorize employees to be compensated based on "pay," not "basic pay." As such, Class Plaintiffs are entitled to receive the total amount of compensation that they customarily and regularly are paid when they elect to use authorized accrued "leave with pay." *See Armitage,* 991 F.2d at 750 (holding that the "correct application of the 'leave with pay' statutes prevents any reduction in customary and regular pay"); *Lanehart,* 818 F.2d at 1581 ("[W]e conclude that 'pay' as used in the 'leave with pay' statutes has consistently been construed for more than a century as encompassing the total compensation or remuneration normally and regularly received by an employee."); *Curry,* 66 Fed.Cl. at 599 ("[T]he Federal Circuit has clearly held that the 'leave with pay' statutes entitle employees to receive the same pay they would have received had they worked.").

**3. Whether The Caregivers And Veterans Omnibus Health Services Act Of 2010 Prohibits Class Plaintiffs From Being Paid "Premium Pay" When They Elect To Use Authorized Accrued "Leave With Pay" On Saturdays.**

After this lawsuit was filed on January 29, 2010, Congress amended the statutes in title 38 that govern the pay of VHA employees. The Caregivers Act of 2010 extends "premium pay" to part-time nurses or full-time nurses who work a shift that is not a part of their regular "tour of duty." *See* Caregivers Act of 2010, Pub.L. No. 111–163, § 601(k)(1), 124 Stat. 1130, 1172 (to be codified at 38 U.S.C. § 7454(b)(3)); *see also* S.REP. No. 111–60, at 18 (2009). The Caregivers Act of 2010 also modifies section 7454(b)(3) to maintain the requirement that section 7408 employees must perform a "tour of duty" to receive "premium pay," in addition to basic pay for work performed on weekends. *See* Caregivers Act of 2010, Pub.L. No. 111–163, § 601(k)(2), 124 Stat. 1130, 1171–72 (to be codified at 38 U.S.C. § 7454(b)(3)) ("Employees appointed under [38 U.S.C. § 7408] performing service on a tour of duty, any part of

which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay in addition to the rate of basic pay provided such employees for each hour of service on such tour at a rate equal to 25 percent of such employee's hourly rate of basic pay.").

Accordingly, the court has determined that the Caregivers Act of 2010 makes no substantive changes to Class Plaintiffs' right to receive "premium pay" in addition to basic pay when they work on weekends, and therefore does not affect their right to receive "premium pay" in addition to basic pay when they elect to use authorized accrued "leave with pay."

**4. Whether The Government Should Be Subject To Sanctions.**

The Government's arguments in this case previously were considered and rejected by the *Curry* court. Therefore, Class Plaintiffs request that the court "exercise its powers under RCFC 11 [6] and order [the Government] to show cause why sanctions should not be imposed." Pl. Reply at 5–6. Although the United States Court of Federal Claims rejected all of the Government's arguments in *Curry,* that decision, while persuasive, has no precedential effect. *See Buser v. United States,* 85 Fed.Cl. 248, 259 n. 12 (2009) ("[T]he court is not bound by other decisions in the Court of Federal Claims[.]"); *see also Reidell v. United States,* 47 Fed.Cl. 209, 212 (2000) ("A decision here is not binding on other judges in this same court." (citation omitted)). Therefore, the court has determined that the Government's defenses in this case do not warrant the imposition of sanctions.

**IV. CONCLUSION.**

For the reasons stated herein, Class Plaintiffs' September 29, 2010 Motion For Partial Summary Judgment As To Liability is granted. The Government's November 22, 2010 Cross–Motion For Summary Judgment is denied.

---

**6.** All counsel who appear before the court are requested to certify to the best of their "knowledge, information, and belief" that "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." RCFC 11(b)(2).

The parties are ordered to meet and confer to discuss an efficient manner to ascertain the monetary awards due to Class Plaintiffs and how that process should be administered. The court will schedule a telephone status conference on Tuesday, September 13, 2011 at a time convenient to the parties.

**IT IS SO ORDERED.**

### COURT APPENDIX: DEFINITION OF THE CERTIFIED CLASS.

The opt-in class in the above captioned case consists of persons who meet the following requirements:

All General Schedule employees as defined by section 2105 of Title 5 who were not included in the class certified in *Curry v. United States*, 81 Fed.Cl. 328 (2008), and who were employed from January 1, 2004 or thereafter by the Department of Veterans Affairs in the Veterans Health Administration as one of the following occupations:

(1) Series 0060, Chaplain; Series 0101, Social Science; Series 0102, Social Science Aid and Technician; Series 0181, Psychology Aid and Technician; Series 0184, Sociology; Series 0186, Social Services Aid and Assistant; Series 0187, Social Services; Series 0188, Recreation Specialist; Series 0189, Recreation Aid and Assistant; Series 0334, Computer Specialist (DHCP Operations Only); Series 0401, General Biological Science; Series 0403, Microbiology; Series 0404, Biological Science Technician; Series 0405, Pharmacology; Series 0413, Physiology; Series 0415, Toxicology; Series 0601, General Health Science; Series 0621, Nursing Assistant; Series 0622, Medical Supply Aid and Technician; Series 0625, Autopsy Assistant; Series 0636, Rehabilitation Therapy Assistant; Series 0637, Manual Arts Therapist; Series 0638, Recreation/Creative Arts Therapist; Series 0639, Education Therapist; Series 0640, Health Aid and Technician; Series 0645, Medical Technician; Series 0646, Pathology Technician; Series 0664, Restoration Technician; Series 0670, Health System Administration; Series 0671, Health System Specialist; Series 0673, Hospital Housekeeping Management; Series 0679, Medical Support Assistant; Series 0683, Dental Laboratory Aid and Technician; Series 0690, Industrial Hygienist; Series 0698, Environmental Health Aid and Technician; Series 0699, Student Nurse Technician (Title code 63 only); Series 0701, Veterinary Medical Science; Series 0704, Animal Health Technician; Series 1020, Medical Illustrator; Series 1060, Photographer (Medical); Series 1301, General Physical Science; Series 1306, Health Physics; Series 1310, Physics; Series 1311, Physical Science Technician; Series 1320, Chemistry; Series 1725, Public Health Educator; Series 1910, Quality Assurance; Series 2210, Computer Specialist (DHCP Operations Only); and

(2) who regularly and customarily worked on a tour of duty any part of which was within the period beginning midnight Friday and ending midnight Saturday (which did not include any Sunday hours); and

(3) who received premium pay of 25% or more pursuant to 38 U.S.C. § 7454(b)(3) for each such hour of service between midnight Friday and midnight Saturday; and

(4) whose "pay" during periods of authorized paid leave pursuant to Chapter 63 of Title 5 for any part of such tour of duty from midnight Friday to midnight Saturday (which did not include any Sunday hours) was reduced in amounts equal to the Saturday premium pay pursuant to 38 U.S.C. § 7454(b)(3) to which such employees would have been paid had they performed their regular and customary work on Saturdays instead of using authorized paid leave.